UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

In re

MICHAEL and CHRISTINE FARRELL,   No. 06-10863

                Debtor(s).
_____/
ROGER ASHKENAZI,

                Plaintiff(s),

    v.                                                     A.P. No. 07-1038

MICHAEL and CHRISTINE FARRELL,

                Defendant(s).
_____/

Memorandum After Trial
_____

      In this adversary proceeding, plainitff Roger Ashkenazie originally came up with numerous theories as to why his claims against Chapter 7 debtors and defendants Michael and Chrinstine Farrell should be declared nondischargeable or their discharge ought to be denied. At the beginning of trial, Ashkenazi abandoned all claims except two allegations of fraud pursuant to § 523(a)(2) of the Bankruptcy Code and two grounds for denial of discharge. At the conclusion of his case, the court granted the Farrells' motion to dismiss the claims for denial of discharge. Only two fraud allegations are left to be decided.

      Both Ashkenazi and the Farrells appear to be the victims of a confidence man named Mouli Cohen,

1

who was a friend of Ashkenazi. Cohen was introduced to Michael Farrell by a mutual friend. Farrell told Cohen that he needed to borrow some money for his business. Cohen then arranged a meeting between Farrell and Ashkenazi, setting in motion the events that led to today.[1]

It is difficult to evaluate a nonparty who did not appear as a witness, but it appears that Cohen pulled a con on both Ashkenazi and Farrell. Cohen told Ashkenazi that he did not want to seem to loan money to a friend, so he wanted Ashkenazi to be his "front man" and loan Farrell $100,000.00 which Cohen told Ashkenazi he would then reimburse. So completely was Ashkenazi taken in that even though Cohen never paid Ashkenazi a dime Ashkenazi nevertheless turned over the usurious interest payments of $14,000.00 every five weeks (150% per annum!) to Cohen. Eventually, Cohen cheated Ashkenazi out of about $1 million. Both Ashkenazi and Farrell agree that Cohen is a cheat.

The court notes two important points about the initial transaction between Ashkenazi and Farrell. First, it was plaintiff Ashkenazi who made misrepresentations to Farrell, not the other way around. Second, Ashkenazi's cooperation enabled Cohen to gain Farrell's confidence which led directly to the supposed fraud of Farrell a year or two later.

Ashkenazi's case was very vaguely pleaded and disjointed in presentation to the court, as he seemingly shifted gears as to exactly what fraud Farrell supposedly committed.[2] In its final form, the allegation is that in a deal structured by Cohen Ashkenazi agreed to purchase an interest in Farrell's business for $450,000.00, which included the original $100,000.00 Cohen convinced Ashkenazi to "loan" to Farrell. Ashkenazi says Farrell told him that his investment funds would be used to purchase equipment and expand business operations. At the time he made the representations, Ashekanazi alleges that Farrell's true intent was to invest the money in the same Cohen venture as Ashkenazi. When Ashkenazi learned the true facts, he decided that he had been defrauded by Farrell.

---

[1]Christine Farrell was not involved in any of the dealings between her husband and Ashkenazi.

[2]Ashkenazi originally alleged that Farrell has misrepresented the profitability of his business. He abandoned this claim at the commencement of trial.

2

Ashkenazi did not prove a single element of his alleged fraud. In fact, he presented little or no evidence on all of the elements

Despite a written agreement drafted by Ashkenazi's attorney, there is no convincing evidence, and certainly no written evidence, that Farrell represented how Ashkenazi's investment would be used.

Even if there had been convincing evidence that Farrell represented that the funds would be used in the business, the evidence before the court is that the funds were used in the business. Farrell did buy equipment with the funds. His use of business funds to buy stock in Cohen's company was several months after Ashkenazi put his money into the business. Ashkenazi's counsel harped on the fact that Ashkenazi's funds were "co-mingled" in the general business account, but there is not the slightest hint of a basis for finding that to be improper.[3]

Moreover, there is not the slightest basis for the court to infer any fraudulent intent on the part of Farrell. There is no basis for the court to find that he intended to cheat Ashkenazi in any respect. If he is guilty of anything, it is the same gullibility Ashkenazi demonstrated.

There is also no credible evidence of any kind of reliance on the alleged false representations. Cohen actually had Ashkenazi convinced that he was privileged to have been allowed to invest in Cohen's company. He was shocked to learn that Farrell had also been allowed to invest. His statements that he would not have invested in Farrell's company if he had know the "true" fact that Farrell intended to use the business funds to invest in Cohen's company accordingly are not convincing.

In short, Ashkenazi did not prove there was a representation by Farrell. He did not prove that the alleged representation was false. He did not prove the alleged representation was made with fraudulent intent, and did not prove that he justifiably relied on the alleged false representation. The court accordingly cannot find in his favor.

A small separate matter was also alleged. On February 2, 2005, Ashkenazi loaned Farrell

---

[3] The vague claims based on § 523(a)(4) of the Bankruptcy Code were abandoned by Ashkenazi at the commencement of trial.

3

$35,000.00 in return for a post-dated check in order to help Farrell purchase a home. Ashkenazi alleges, without any evidence, that the bank account upon which the post-dated check was drawn was closed when Farrell borrowed the money, Farell knew it, and never intended to repay the loan. Ashkenazi produced no evidence that the account was in fact closed. Farrell testified that the account was open. Moreover, during this time Farrell had paid Ashkenazi about $150,000.00 pursuant to a settlement they reached when Ashkenazi wanted out of the business, so there is not the slightest basis for the court to infer fraudulent intent.

For the foregoing reasons, Ashkenazi shall take nothing by his complaint, which will be dismissed with prejudice. The Farrells shall recover their costs of suit.

This memorandum constitutes the court's findings and conclusions pursuant to FRCP 52(a) and FRBP 7052. Counsel for the Farrells shall submit an appropriate form of judgment forthwith.

Dated: July 17, 2008

Alan Jaroslovsky
U.S. Bankruptcy Judge

4